IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


BRIAN J.,[1]                                    No. 3:22-cv-01489-JR

                    Plaintiff,                  OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.


RUSSO, Magistrate Judge:

        Plaintiff Brian J. brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying his application for Title II

Disability Insurance Benefits under the Social Security Act ("the Act"). All parties have

consented to allow a Magistrate Judge to enter final orders and judgement in this case in

_____

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). ECF No. 21. For the reasons set forth

below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

Born in October, 1967, plaintiff alleges disability beginning December 31, 2010, with a

date last insured of September 30, 2016. Tr. 26, 28, 173-181. Plaintiff alleged disability due to

"left and right knee problems, back and shoulder problems, and PTSD." Tr. 240. His application

was denied initially and upon reconsideration. Tr. 98-108. On March 10, 2021, plaintiff appeared

at an administrative hearing before Administrative Law Judge ("ALJ") Cynthia Rosa. Tr. 45-68.

On May 19, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 23-44. After the

Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff did not

engage in substantial gainful activity during the period from his alleged onset date of December

31, 2010, through his date last insured of September 30, 2016. Tr. 28. At step two, the ALJ

determined the following impairments were medically determinable and severe: "left knee

degenerative joint disease status post total knee replacement, obesity and moderate right knee

osteoarthritis." Tr. 28. At step three, the ALJ found plaintiff's impairments, either singly or in

combination, did not meet or equal the requirements of a listed impairment. Tr. 30.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued

to evaluate how his impairments affected his ability to work. The ALJ resolved that plaintiff had

the residual function capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §

404.1567(a) except:

> he can occasionally balance, stoop, crouch, crawl, kneel…but can never climb
> ramps and stairs.

Tr. 21-22.

At step four, the ALJ determined that the claimant was unable to perform any past

relevant work. Tr. 38. At step five, the ALJ found there were other jobs existing in significant

numbers in the national economy that plaintiff could perform such as phone solicitor, addresser,

ticket taker, hand packager, and order clerk. Tr. 40. The ALJ therefore found plaintiff not

disabled from December 31, 2010, the alleged onset date, through September 30, 2016, the date

last insured. Tr. 40.

## DISCUSSION

Plaintiff argues the ALJ committed four harmful errors in her written opinion. He

contends the ALJ erred by (1) improperly rejecting his severe mental impairments as groundless

at step two, (2) discounting his testimony without a clear and convincing reason for doing so, (3)

improperly evaluating Douglas Renouard, M.D., and Thomas Huff, M.D.'s medical opinions,

and (4) relying on vocational expert testimony at steps four and five that was the product of

incomplete hypotheticals. For the reasons that follow, the Court finds the ALJ did not err, and

affirms.

## I.    Step Two

The Social Security Act provides that a medically determinable impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.

§ 423(d)(3); *see also* 20 C.F.R. § 416.921 ("The impairment(s) must result from anatomical,

physiological, or psychological abnormalities that can be shown by medically acceptable clinical

and laboratory diagnostic techniques."). "[A] physical or mental impairment must be established

by objective medical evidence from an acceptable medical source" and the Commissioner "will

not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." *Id.*

Step two proceeds in two steps. After the Commissioner first "establish[es] that [the claimant has] a medically determinable impairment(s)," he must then "determine whether [the claimant's] impairment(s) is severe." *Id.*; *see also* 20 C.F.R. § 416.920(a)(4)(ii) (noting that at the second step of the sequential evaluation process, "we consider the medical severity of your impairment(s)"). The ALJ may find an impairment is not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Social Security Ruling (SSR)* 85-28; *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (noting that "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on [the claimant's] ability to work.'" (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996))). "Medical evidence alone is evaluated in order to assess the effects of the impairments on ability to do basic work activities." *Social Security Ruling (SSR)* 85-28.

"If [the claimant does] not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, [the Commissioner] will find that [the claimant is] not disabled." 20 C.F.R. § 416.920(a)(4)(ii); *see also* 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement.").

Plaintiff has the burden to present evidence sufficient to establish a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities. 20

C.F.R. § 416.920(c); *see also Judith Y. v. Saul*, 2020 WL 7024949, at *6 (C.D. Cal. Nov. 30,

2020) ("[T]he mere diagnosis of an impairment does not establish that it was severe." (citing

*Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999)). To satisfy step two's requirement of a

severe impairment, plaintiff must prove his medically determinable impairments, either singly or

in combination, "[s]ignificantly limit your physical or mental ability to do basic work activities.

20 C.F.R. § 416.922(a). To qualify, the plaintiff's impairments must last, or be expected to last,

for at least 12 consecutive months. 20 C.F.R. § 416.905.

      The ALJ did not err by finding that plaintiff's PTSD was non-severe at step two because

plaintiff failed to carry his burden to demonstrate the condition met the 12-month durational

requirement. To substantiate a severe limitation at step two, claimants have the burden to

produce evidence showing their limitations lasted, or would be expected to last for at least 12

months. Plaintiff introduced evidence of an acute psychosis from September 11, 2011, to

October 20, 2011 (Tr. 427-428), but did not establish that any significant limitations lasted for a

full 12 months. Tr. 327. Plaintiff argues the ALJ ought to have inferred his PTSD met the step

two durational requirement because of Dr. Renouard's 2021 opinion limiting plaintiff due to his

PTSD and recurrent nightmares and anxiety. Pl. Reply at 10 (citing Tr. 814-818). But this is a

medical opinion assessing plaintiff's limitations on a particular date, not evidence of a condition

that significantly limited plaintiff lasting at least 12 months. Tr. 814-818. The ALJ explained that

plaintiff's evidence pointed to significant limitations lasting no more than two consecutive

months, and plaintiff has provided no evidence that these impairments persisted for the required

duration of time. Tr. 34. On appeal, plaintiff points to no evidence overlooked by the ALJ, apart

from Dr. Renouard's opinion. Pl. Reply at 9-10. Without providing some evidence that would

meet the durational requirement, plaintiff did not meet his burden of establishing the medical

severity of his impairment, and the ALJ did not err in concluding that plaintiff's mental impairments were non-severe at step two.

## II.    Symptom Testimony

Plaintiff also contends the ALJ erred by discrediting his testimony about knee, back, and shoulder pain, and the limitations these issues caused. Pl.'s Br., ECF No. 11 at 15-19. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

Plaintiff testified at the hearing about his inability to work on a regular, continuous basis due to his combination of physical limitations and medication side effects, with the need to frequently use a cane to get out of bed in the mornings due to the inability to put weight on his leg. Tr. 52 He would wake up the middle of the night with piercing pain through his body, ribs, shoulder, and knee, (Tr. 52-53) and nightmares related to death, violence, and accidents he witnessed while working as a bridge operator, resulting in deficits in concentration, drowsiness and difficulty concentrating, Tr. 53. As a result, plaintiff avoided driving. Tr. 53. Plaintiff testified to waking up with rib pain and misalignment, ongoing knee pain, swelling, and lack of mobility after replacement and surgeries, with accumulation of scar tissue. Tr. 53. He stated that he spent the majority of the day sitting and resting, alternating between the couch and chair, using ice and electrical stimulation in an attempt to alleviate the pain. Tr. 54-55. Plaintiff described the need to be "fairly well medicated" just to go grocery shopping or mow the lawn (Tr. 55), knee issues and failed surgeries from 2008 to 2014, as well as injuries sustained in an auto accident, resulting in limitations, struggling to function, and deficits in mobility dating back to the relevant period. Tr. 57. Plaintiff testified that he was unable to stay on his feet for longer than 30 to 40 minutes at a time following his surgeries due to swelling and pain, the need to use a cane off and on between 2010 and 2013, followed by an increased need to use the cane after knee replacement surgery, swelling and pain since his older surgeries, resulting in the need to use an electrical stimulation machine, as well as elevate his legs twice a day for 30 minutes to an hour at a time (Tr. 58); shoulder pain and rib problems related to his automobile accident in 2012, resulting in the inability to carry a gallon of milk without aggravation of his pain

symptoms, and nerve issues with his arm constantly going to sleep and waking up frequently. Tr. 57-59.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 33. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 33. Specifically, the ALJ found plaintiff's symptom allegations were inconsistent with objective medical evidence, plaintiff's treatment history, and that plaintiff's daily activities conflicted with his symptom allegations. Tr. 33.

The ALJ reasonably discounted aspects of plaintiff's allegations of knee and shoulder pain as inconsistent with the record. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. § 416.929(c)(2). At the hearing, plaintiff testified about his knee pain and the several limitations he suffered as a result, including an inability to stand for longer than 30-40 minutes and the need to use a cane and elevate his leg to reduce swelling at least twice a day. *See, e.g.*, Tr. 57-59. The ALJ acknowledged evidence from 2012 showed limited range of motion, medial tenderness, and crepitation of plaintiff's left knee that led to severe osteoarthritis and eventually a total left knee replacement in March 2013. Tr. 31 (citing Tr. 483, 497–98). The ALJ then compared the medical records from after plaintiff's surgery, and noted only intermittent problems with his left knee flexion and occasional pain with walking. The ALJ also found that plaintiff's left knee range of motion improved such that he no longer required an assistive device by November 2013. Tr. 31 (citing Tr. 531, 997). These records all conflicted with plaintiff's allegations of more significant limitations stemming from his left knee issues. And despite plaintiff's allegations of debilitating

shoulder pain, the ALJ found record evidence that showed plaintiff complained of left shoulder pain after a motor vehicle accident, but that imaging of his left shoulder was negative; he had full range of motion on examination, full strength, unremarkable findings on internal and extremal rotation, and his cross arm, "empty can" and neers tests (a test to check for shoulder impingement) were all negative. Tr. 34 (citing Tr. 633). In sum, these many unremarkable reports amount to substantial evidence supporting the ALJ's decision to discount plaintiff's testimony about pain, weakness, stiffness, and fatigue because her allegations conflict with the record.

The medical records the ALJ cited also show plaintiff's knee issues and drowsiness improved with treatment, which was another clear and convincing reason to discount his symptom testimony. If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). For one, the ALJ noted that plaintiff treated his left knee pain successfully with medication. In July 2014, the ALJ found that plaintiff denied medication side effects and endorsed symptomatic improvement with medication. Tr. 32, 34 (citing Tr. 794, 998 ). Moreover, the ALJ found that in 2016 plaintiff reported that he was "doing well" on his current medication regimen. Tr. 34 (citing Tr. 781). Further examination notes revealed that plaintiff was alert and oriented and able to concentrate well enough to engage in meaningful discussions of his impairments with his health care providers, which was inconsistent with his allegations of debilitating drowsiness. Tr. 34 (citing Tr. 53, 259, 411, 502, 572, 634). The ALJ also found plaintiff's knee improved with surgical- and post-surgical treatment. After a "stable" knee replacement, (Tr. 33, citing Tr. 971), plaintiff's physical functioning improved and he had only mild tenderness to palpation of the left knee but no effusion. Tr. 32, 34 (citing Tr.

792, 997). Additionally, the ALJ found that plaintiff's knee improved in physical therapy. Tr. 32. The record showed that plaintiff underwent 61 physical therapy sessions between March 2013 and October 2013 in which he was discharged into a home exercise program following completion of his treatment goals (Tr. 528– 627). When plaintiff first started treatment, he used two crutches (Tr. 626), then post-surgery, he graduated to a single-point cane 20 percent of the time (Tr. 528), and finally, he no longer required the use of an assistive device by November 2013 (Tr. 32, citing Tr. 997. This was all substantial evidence supporting the ALJ's conclusion that plaintiff's knee improved with physical therapy, and her decision to discount his symptom allegations as a result.

Plaintiff urges the Court to adopt a different interpretation of the medical record, but does not undermine the substantial evidence supporting the ALJ's decision. Specifically, plaintiff argues the ALJ's analysis was " little more than a recitation of the medical record and vague assertions that the claimant's symptom complaints are unsupported by the objective evidence." Pl. Reply at 11. Plaintiff argues that the ALJ ignored multiple years of the relevant period, but does not point to specific medical evidence the ALJ erroneously omitted. Pl. Reply at 11. As noted above, the ALJ's citations to the medical record were sufficiently specific to "show [her] work," and the citations directly contradicted aspects of plaintiff's testimony. *Smartt*, 53 F.4th 499. Plaintiff's arguments are an effort to have this Court re-weigh the evidence, which is beyond the scope of review. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Even when there are two reasonable interpretations—plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld.").

Against that backdrop, even though plaintiff clearly interprets the evidence differently, she has not (and cannot) establish error by simply advancing a different interpretation of the medical evidence. The ALJ adequately considered the evidence that supported plaintiff's allegations, identified medical evidence that conflicted with plaintiff's testimony about the extent and frequency of his knee- and shoulder-related limitations, and reasonably discounted those allegations in his written opinion. *See* Tr. 33-34.

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with his own statements about daily activities. Tr. 31, 34. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). A claimant need not be utterly incapacitated to receive disability benefits, however, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

The ALJ reasonably found several of plaintiff's reported daily activities conflicted with his allegations about left knee pain and physical limitations. To discount a plaintiff's testimony,

an ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn,* 495 F.3d at 639. Although plaintiff argues the ALJ "appear[s] to fault the claimant for rehabbing and making some progress," Pl. Br. at 18, ALJs must take daily activities into account when evaluating a plaintiff's symptom allegations. 20 C.F.R. § 404.1529(c)(3)(i). The ALJ reasonably identified evidence that plaintiff could do more than he alleged at the hearing when deciding to partially discount his symptom testimony. For example, the ALJ noted that plaintiff drove a stick shift, which required significant use of the bilateral lower extremities, which undermined his allegations of debilitating lower extremity impairments (Tr. 36, citing Tr. 633). Moreover, the ALJ found that plaintiff continued to spend time on his boat, exercised, and was able to walk half an hour daily and climb two hundred stairs three times per week after only four and a half months of physical therapy (Tr. 36, citing Tr. 787); see also Tr. 56 (Tr. 32, 34, citing Tr. 999). The ALJ also highlighted plaintiff's part-time work in catering preparation during the relevant period, which was inconsistent with his allegations that he could not perform any work during the relevant period. Tr. 34, citing Tr. 112. Because the ALJ reasonably cited several activities that conflict with plaintiff's allegations about the limitations caused by his knee and shoulder pain, this was another clear and convincing reason for the ALJ to rely upon to discount his testimony.

## III.    Medical Opinion Evidence

Plaintiff also argues the ALJ erred in failing to consider Thomas Huff, M.D.'s medical opinion, and rejecting Douglas Renouard, M.D.'s medical opinions. Pl. Br. at 8-14. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to

the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

A.  *Dr. Thomas Huff, M.D.*

On December 3, 2012, plaintiff presented with progressively worse left knee pain, catching and popping, and markedly changed activities. (Tr. 496-497). Upon examination, he demonstrated slow startup and antalgic gait, severe crepitus, and tenderness to palpation. (Tr. 497-498). It was noted that imaging of the left knee showed obliterated trochlea in the patellofemoral joint, proud osteochondral plugs with large, delaminated flaps of cartilage. (Tr. 498). Dr. Thomas Huff, MD, assessed him with severe osteoarthritis of the left knee s/p multiple attempts at preservation surgery, finding that "he is severely limited and currently cannot work due to his knee. He is indicated for TKR [total knee replacement] despite [h]is young age." (Tr.

498). Plaintiff argues the ALJ erred by not addressing Dr. Huff's opinion that he was "severely limited," and "cannot work due to his knee." Tr. 498.

The ALJ did not err by failing to address Dr. Huff's comments that plaintiff would be unable to work due to his knee pain because this was not a "medical opinion" requiring individual analysis. The regulations for claims filed after March 27, 2017 define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s)." 20 C.F.R. § 404.1513(a)(2)(i)-(iv). "Opinions on some issues ... are not medical opinions," such as medical providers' conclusions that you are "disabled' or 'unable to work,'" which are "issues reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d)(1-3). An ALJ need not provide analysis if the evidence is "neither valuable nor persuasive to the issue," such as "statements on issues reserved to the Commissioner." 20 C.F.R § 416.920b(c)(1)-(2). To merit consideration, the medical provider's opinion must discuss both a claimant's limitations and "what [the claimant] is still capable of doing despite those limitations." *Rodin v. Comm'r of Soc. Sec.*, 2023 WL 3293423, at *15 (E.D. Cal. May 5, 2023). Dr. Huff's opinion does not qualify because he did not provide any description of what plaintiff could still do despite his knee issues. Tr. 496-98. Nothing in the record or plaintiff's briefing shows where Dr. Huff identified what plaintiff can do despite his limitations; the sum total of the opinion is that his left knee made him "severely limited" and unable to work. Tr. 498. Because that is not a "medical opinion" that requires independent analysis under the regulations, the Court finds the ALJ did not err by failing to analyze Dr. Huff's comments.

### B.  Dr. Douglas Renouard, M.D.

On February 23, 2021, Dr. Renouard, the claimant's longtime treating physician since 2000, provided a medical source statement indicating the following: (1) plaintiff suffers from

osteoarthritis of the left knee status post 5 surgeries and PTSD; (2) his knee impairment results in chronic pain, poor mobility, and stiffness; (3) PTSD results in recurring nightmares and anxiety; (4) he is limited to sedentary work or less due to the inability to walk/stand for more than five to 10 minutes and the need to stretch after 15 minutes of sitting; (5) his left knee has been problematic for much of his life, with the inability to ambulate effectively due to gross anatomical deformity, chronic joint pain, stiffness, limitation of motion, joint space narrowing, bony destruction, and ankyloses; (6) he has various postural and manipulative limitations; (7) his pain symptoms, medications for pain, and PTSD flares cause limitations in cognition and social interaction, resulting in marked limitation in interacting with others, adapting or managing himself, and concentration, persistence, or maintaining pace; (8) he would require unscheduled breaks from even a simple, routine job due to the need to stretch, ice, and elevate his leg, as well as take pain medications; (9) he would be expected to miss 16 hours or more work per month from even a simple, routine job due to severe pain or the need to take high dose pain medications, which severely limits getting to any job or performing work most days; and (10) his limitations have existed since on or before September 30, 2016, as his progressive pain and disability have been present for at least five years and closer to 10+ years. Tr. 1034-1037. The ALJ found Dr. Renouard's opinion "unpersuasive" because it lacked support in the record and was inconsistent with other medical evidence. Tr. 37.

The ALJ adequately discussed the strength of the evidence underlying Dr. Renouard's opinion in the record when finding it unpersuasive. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ discounted Dr. Renouard's opinion as

vague as to the time period and internally inconsistent. As an initial matter, the ALJ noted that it

was unclear from the February, 2021, form Dr. Renouard filled out whether his opinions applied

to the relevant period, which ended in September, 2016. Tr. 38. The ALJ also rejected Dr.

Renouard's opinion because there were internal inconsistencies between the February, 2021

opinion and Dr. Renouard's own treatment records. Tr. 38. For example, though Dr. Renouard

indicated on the questionnaire form that plaintiff had "progressive pain and disability" for at least

the past five years (Tr. 38, citing Tr. 1037), the ALJ identified Dr. Renouard's July, 2014

examination documenting plaintiff's mildly diffuse tenderness and mild decreased sensation and

parethesias of the left knee. Tr. 783. The ALJ highlighted that these earlier notes were

inconsistent with the progressive pathology and limitations that Dr. Renouard imposed in his

2021 opinion. These internal inconsistencies and the overall vagueness of the February, 2021

form are substantial evidence supporting the ALJ's decision to reject Dr. Renouard's opinion.

The ALJ also reasonably considered the inconsistency of Dr. Renouard's limitations with

the overall medical record. The consistency factor requires the ALJ to assess medical opinions'

alignment with "evidence from other medical sources and nonmedical sources in the claim." 20

C.F.R. § 404.1520c(c)(2). The ALJ reasonably found several aspects of Dr. Renouard's opinion

inconsistent with the record, and therefore unpersuasive. Tr. 38. The ALJ explained that Dr.

Renouard's manipulative limitations were inconsistent with the medical record because there

was no imaging of plaintiff's hand that showed osteoarthritis during the relevant period (Tr. 38,

referring to Tr 1036). Further, plaintiff has pointed to no evidence in the record of any hand

osteoarthritis that would corroborate Dr. Renouard's opinion. Pl. Br. at 8–13. As for Dr.

Renouard's opinion that plaintiff's pain was "progressive" over the last five years, the ALJ found

his opinion inconsistent with the record that indicated plaintiff "felt that he was doing well on his

current regimen." Tr. 38 (citing Tr. 781). The ALJ also reasonably discounted Dr. Renouard's

absenteeism limitation and opinion about unscheduled breaks as inconsistent with medical

records of plaintiff's lower extremity functionality and pain symptoms (Tr. 37, referring to Tr.

1037). Finally, the ALJ noted that Dr. Renouard's opinions were inconsistent with other

persuasive medical opinions in the record, like those of Drs. Jim Takach, M.D., and Nathaniel

Arcega, M.D. Tr. 38. The ALJ adequately considered these objective findings, and reasonably

concluded they were inconsistent with several of the limitations in Dr. Renouard's 2021 opinion.

### IV. Step Five

Plaintiff argues the ALJ committed an independent error at step five by failing to include

relevant limitations in hypotheticals posed to the vocational expert. Specifically, plaintiff points

to limitations the ALJ discredited elsewhere—that he is limited to occasional reaching and

handling, absent 15 hours or more per month, or needs to elevate his legs for at least an hour

outside of normally scheduled breaks during the workday—and argues the ALJ should only rely

on hypotheticals that included these limitations. Pl. Br. at 19 (citing Tr. 65). As discussed above,

however, the ALJ reasonably rejected these limitations, and supported his decision to do so with

substantial evidence. This step five argument merely rehashes plaintiff's prior arguments and

therefore fails for the reasons previously articulated. *See Stubbs-Danielson v. Astrue*, 539 F.3d

1169, 1175–76 (9th Cir. 2008) (rejecting a step  five argument that "simply restates" arguments

about medical evidence and testimony); *Hairston v. Saul*, 827 Fed. App'x 772, 773 (9th Cir.

2020) (summarily rejecting claimant's arguments that RFC and step-five findings were

unsupported by substantial evidence as "derivative of her preceding arguments addressed and

rejected above."); *see also Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) (acknowledging

there is no requirement that testimony for which the ALJ has provided specific and legitimate

reasons to discount be included in the hypothetical given the VE). Because plaintiff's step five argument adds nothing new, the Court finds the ALJ did not err at step five by relying on the hypotheticals as posed to the VE.

Plaintiff also argues that substantial evidence does not support the ALJ's step five finding because evidence he pulled from a competing source—Job Browser Pro—shows there are fewer jobs available to plaintiff than indicated by the VE.

At step five of the sequential analysis, the burden of proof rests with the Commissioner to establish whether other work exists in the national economy that an individual of the claimant's age, education, work experience, and RFC can perform. *See* 20 C.F.R. § 416.969; *Tackett*, 180 F.3d at 1099. In making this finding, an ALJ relies "primarily" on the Dictionary of Occupational Titles (DOT) for information about the requirements of other work in the national economy. Social Security Ruling 00-4p. This includes the DOT's companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles. *See* U.S. Dep't of Labor, SCO (U.S. Emp. And Training Admin., 1993). An ALJ may also rely on a VE as a source of occupational evidence. *Id.* A VE's testimony is "one type of job information that is regarded as inherently reliable." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). The VE's testimony is substantial evidence and no additional foundation beyond the VE's recognized expertise is required for the VE's testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). VE testimony, however, "is not incontestable." *Buck*, 869 F.3d at 1051. For example, a court cannot ignore "vast discrepanc[ies] between the VE's job number and those numbers tendered by [plaintiff], presumably from the same source." *Id*. at 1052.

A court must consider the evidence the plaintiff presents to the Appeals Council. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) ("We hold that

when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence."). "[A] claimant who wishes to challenge the factual basis of a VE's estimate of the number of available jobs in the regional and national economies must raise this challenge before administrative proceedings have concluded." *Shaibi v. Berryhill*, 883 F.3d 1102, 1103 (9th Cir. 2017); see also id. at 1108 (holding that the plaintiff had not preserved his challenge to the ALJ's reliance on the VE's job numbers because the plaintiff did not "cross-examine the VE as to the accuracy of those [numbers], or challenge that accuracy before the Appeals Council" (emphasis added)). A court must consider additional materials that the plaintiff did not present to the ALJ but did present to the Appeals Council even when the Appeals Council denied claimant's request for review. *Brewes*, 682 F.3d at 1159-60.

Because plaintiff did not present his evidence to the ALJ during or after the hearing, the ALJ did not have any occasion to address the purported inconsistency between the VE's estimates and plaintiff's contrary estimates. The Court therefore must determine whether plaintiff's estimates were both significant and probative, which would require a remand to the ALJ to reconsider his step-five finding that there were a significant number of jobs in the national economy that plaintiff could perform (based on the VE's testimony). *See White*, 44 F.4th at 836–37. Competing job data is "significant and probative" where the proponent uses the same methodology as a that used by the VE, or provides some other patina of relevance. *See Wischmann v. Kijakazi*, 68 F.4th 498, 506 (9th Cir. 2023) (finding evidence was not significant and probative because counsel's six pages of Job Browser Pro printouts "provide[] no

information about how the job numbers were produced, other than the name of the software program used").

Plaintiff's competing job availability evidence is not significant and probative because he does not use the same method as the VE, and his evidence is not inherently relevant on its own. Here, plaintiff presented job numbers data from a different source than the source used by the VE. Tr. 12-22. Plaintiff's data therefore does not undermine the inherent reliability of the VE's testimony. *See Buck*, 869 F.3d at 1051. Nor are the ten pages of printouts significant and probative standing alone. As in *Wischmann,* the ten pages of Job Browser Pro data plaintiff's counsel submitted to the Appeals Council is raw and uninterpreted. *See* Tr. 12-22. Furthermore, it is not clear whether it is from the relevant time period of December 31, 2010 through September 30, 2016. *Id.* Plaintiff's printouts appear to reflect job availability in 2021, five years after the relevant period ended. *See* Tr. 12-22. Ultimately, plaintiff had ample opportunity to cross-examine the VE about methodologies during the hearing but chose not to. Because plaintiff has not shown a discrepancy between available job numbers using the same source as the VE, and the job numbers he submitted are not significant and probative on their own, the Court finds substantial evidence supports the ALJ's step five finding.

## CONCLUSION

For the reasons given above, the Commissioner's decision is affirmed and this case is dismissed.

IT IS SO ORDERED.

DATED this 17th day of September, 2024

　/s/ Jolie A. Russo
_____
Jolie A. Russo
United States Magistrate Judge